# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NOVAPRO HOLDINGS, LLC, *et al.*, | : | Chapter 7 |
| | : | Case No. 14-10895-LSS |
| Debtors. | : | (Jointly Administered) |
| | : | |
| NEBO VENTURES, LLC, | : | Adv. No. 16-50435-LSS |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 18-766-RGA |
| CHARLES A. STANZIALE, JR., *et al.*, | : | |
| | : | |
| Appellees. | : | |

## MEMORANDUM

Pending before this Court is the appeal of Nebo Ventures, LLC ("Nebo") from a Memorandum Order (Adv. D.I. 68) ("Op."),[1] entered by the Bankruptcy Court on May 4, 2018, which approved a motion for approval of the settlement of claims pursuant to Federal Rule of Bankruptcy Procedure 9019 (B.D.I. 57) ("Settlement Motion") filed by Charles A. Stanziale, Jr., as the trustee appointed in the above-captioned Chapter 7 cases ("Trustee"). For the reasons set forth below, the Memorandum Order is affirmed.

## I. BACKGROUND

This appeal arises from the Chapter 7 cases of NovaPro Holdings, LLC ("NPR") and certain of its affiliates (together, "Debtors"). The settlement underlying this appeal is among the Trustee and defendants who are former owners and chief executives of the Debtors (together, "Defendants"): (i) U.S. Risk Insurance Group, Inc. ("U.S. Risk"), which holds a 75.9% share of the

---

[1] The docket of the chapter 7 cases, captioned *In re NovaPro Holdings, LLC.*, No. 14-10895-LSS (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *Charles A. Stanziale, Jr. v. U.S. Risk, et al.*, Adv. No. 16-50435-LSS (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

Debtors (directly and indirectly); (ii) ISLLC Investments, Inc. ("ISLLC"), an affiliate of U.S. Risk, which holds the other 24.1% share of the Debtors; and (iii) Randall G. Goss ("Goss"), who is the Debtors' chief executive officer and board chairman and is also U.S. Risk's chief executive officer.

NPR was embroiled in prepetition litigation with appellant Nebo as well as NPR's former chief operating officer, Russell Whitmarsh. (10/26/17 Hr'g Tr. ("Hr'g Tr.") at 18:14-18; 23:10-23; 32:14-25). Nebo assists financial service companies and workmen's compensation insurance providers and administrators in obtaining and performing under contracts with state and local governments. In 2003, NPR retained Nebo to assist it in selling administrative services to potential customers. On July 1, 2011, Nebo sued NPR for breach of contract and fraud for fees owed to Nebo on NPR's contract with the City of Atlanta, which led to four years of state court litigation.[2] NPR initially failed to disclose that it received a $1 million bonus from the City of Atlanta which would have resulted in additional fees payable to Nebo.[3] Following the trial, Nebo obtained a judgment of $1,437,357.86. Whitmarsh filed an employment claim with the American Arbitration Association following his termination and was awarded judgment in the amount of $544,400.73 plus interest.

In July 2011, while under Defendants' control, NPR sold 100% of its assets to Carl Warren & Co., which generated sale proceeds in excess of $7 million.[4] After completing the asset sale, the Debtors made various payments and entered into obligations with Defendants, which would later become of interest to Trustee (collectively, the "Transfers"). One group of Transfers, totaling approximately $1.7 million, were made to U.S. Risk ("Intercompany Transfers"). A second group

---

[2] *Nebo Ventures, LLC v. NovaPro Risk Solutions, L.P.*, 324 Ga. App. 836 (Ga. Ct. App. 2013).
[3] *Id.*
[4] As a result of the sale, NPR received $5,315,000 in sale proceeds. (Adv. D.I. 1 ("Complaint") at 6-7). Later that year, NPR received $1,542,509 in further proceeds related to holdbacks and working capital adjustments. (*Id.* at 7). In February, 2013, NPR received additional sale proceeds of $197,615 on account of an earn-out receivable. (Hr'g Tr. at 16:4-8).

of Transfers, two alleged dividend payments ($1,062,600 and $337,400), were made to various Defendants ("Equity Distribution Transfers"). A third group of transfers, totaling approximately $120,000, were based on payments to U.S. Risk pursuant to a post-asset sale management agreement ("Management Agreement Transfers") while NPR was no longer operating.[5]

On April 15, 2014, Debtors filed voluntary Chapter 7 petitions. Trustee was appointed in each of the Debtors' cases, which were jointly administered and later substantively consolidated. On the petition date, Debtors had $1.98 in their bank accounts. Trustee retained McCarter & English as counsel and MazarsUSA LLP as its financial advisor. (B.D.I. 11). Trustee's professionals were retained to investigate transfers made to insiders, potential preference and fraudulent conveyance claims, provide forensic accounting services, and prepare a forensic solvency analysis. (B.D.I. 45 & 66; Hr'g Tr. at 51:1-10).

The largest proofs of claims in the Chapter 7 cases were filed by U.S. Risk ($660,000), Nebo ($1,437,357.86), and Whitmarsh ($623,321.78). Together, Nebo and Whitmarsh account for 99% of the non-insider claims. (Hr'g Tr. at 14:23-15:1). With respect to administrative claims, McCarter & English is owed non-contingency fees of $125,000 and MazarsUSA is owed $136,000. (Op. at 4).

On April 4, 2016, Trustee commenced an adversary proceeding against U.S. Risk and the other Defendants seeking avoidance of the Transfers, compensation for alleged damages, equitable relief, and disallowance and/or subordination of the proof of claim filed by U.S. Risk. (Adv. D.I. 1; Hr'g Tr. at 8:12-25). Trustee sought to recover, on various legal theories, the approximately $3.34 million in Transfers made by the Debtors to U.S. Risk over the period of October 3, 2011 through July 10, 2012, and to avoid the obligations incurred in the entry of the post-asset sale management

---

[5] All transfers were made to U.S. Risk, except for the transfer of $337,400, on February 8, 2012, which was made to ISLLC.

3

agreement with U.S. Risk. Trustee further sought to recover against Goss for breach of fiduciary duty or aiding and abetting of breach of fiduciary duty in directing or permitting the Transfers. Trustee further sought to recover against all Defendants on an "alter ego" theory, pursuant to which Trustee alleged that Defendants maintain direct or indirect ownership interests in Debtors, conducted the Debtors' affairs, and used the Debtors as a vehicle to defraud Debtors' creditors. The Complaint further alleges that each of the Debtors' officers was an officer of U.S. Risk. Finally, Trustee sought to disallow and/or subordinate the $660,000 proof of claim filed by U.S. Risk.

In June of 2016, each of the Defendants moved to dismiss ("Motions to Dismiss") the Complaint, which Trustee opposed. The Motions to Dismiss assert multiple grounds for dismissal, including that the claims are barred by the applicable statutes of limitation, Trustee lacks standing with respect to claims against two of the Debtors, and Trustee fails to state causes of action. Trustee moved to amend the Complaint, which Defendants opposed.

In March of 2017, the parties engaged in mediation. While the mediation was unsuccessful, Trustee asserts that he and his professionals "gained more insight into Defendants' defenses and position in the adversary proceeding." (Adv. D.I. 57 at 3). Trustee further asserts that, thereafter, and in consultation with his professionals, Trustee determined that "settling the adversary proceeding provided the best route to recovery for creditors." (*Id.* at 4). Trustee subsequently reached a settlement with Defendants. The settlement requires (1) U.S. Risk to pay Trustee $300,000; (2) U.S. Risk to withdraw its $660,000 proof of claim and waive any other claims it may have had; (3) Defendants' waiver of the $300,000 claim under § 502(h) of the Bankruptcy Code; and (4) mutual releases of all claims. Trustee projected a 10% recovery to general unsecured creditors, like Nebo, if the settlement was approved. To facilitate that distribution, McCarter & English agreed to write off $150,000 in non-contingency fees and Mazars agreed to write off $75,000 in fees. On September 6, 2017, Trustee filed the Settlement Motion asking the Bankruptcy

4

Court to approve the parties' compromise. (Adv. D.I. 57).

Nebo opposed the settlement. (*See* Adv. D.I. 58). The opposition outlined years of state court litigation Nebo endured in obtaining its judgment against NPR, including appeals to the Georgia Court of Appeal and Georgia Supreme Court, which Nebo attributes to the litigation tactics and gamesmanship of NPR and U.S. Risk. (*See id.* at 1-11). Nebo argued that similar tactics were employed in the course of Whitmarsh's employment claim against NPR for its failure to honor the severance provisions in his employment contract, and that the Chapter 7 filing was another tactic.[6] Nebo argued that the Bankruptcy Court should not approve the settlement, because, despite having engaged in "no discovery," Trustee sought approval of a settlement in an amount that "does not even represent the cost of defense," would result in only a *de minimis* distribution to creditors, and would benefit only Defendants, Trustee, and his law firm. (*See id.* at 1-2). Nebo further argued that Trustee had failed to carry his burden of establishing that the settlement was fair and equitable. (*Id.* at 20-21).

In reply, Trustee argued that the settlement should be approved because it (i) includes a reduction in professionals' administrative claims, (ii) provides a 10% return to creditors in a no-asset case, (iii) deems withdrawn all of Defendants' claims against the estates, totaling nearly $1 million, and (iv) permits Trustee to close the Chapter 7 cases. (*See* Adv. D.I. 60). Trustee argued that Nebo's opposition did not take into account Trustee's position on litigation costs and risks, the

---

[6] In the Superior Court of San Diego County, California, Whitmarsh sought to add U.S. Risk as a judgment defendant, and argued that U.S. Risk:
> used its position of control over NPR to strip NPR's assets bare – by paying itself unconscionable ghost "management" payments of $20,000 per month to "run" the then defunct business of NPR – and by paying itself and another [U.S. Risk] insider … a $1.4 million dividend at a time [U.S. Risk] and NPR were actively defending Judgment Creditor's claim and had more than abundant assets to satisfy it. [U.S. Risk's] intent from the beginning was to make Judgment Creditor's inevitable judgment against NPR uncollectible, and it did so, by draining NPR's assets and then, in April of this year putting NPR into Chapter 7 "No Asset" bankruptcy in Delaware with $1.98 in assets.

(Adv. D. I. 58 at 12; *id.*, Ex. 13 at 1).

5

probability of success, and the merits of the Defendants' asserted defenses, all of which support Trustee's business judgment decision to settle. According to Trustee, Nebo did not propose any counter settlement or offer to the estate. Trustee argued that, while Nebo would obviously prefer that Trustee "take a chance on litigation" and pursue collection of Nebo's judgment solely on its behalf, Trustee had a fiduciary duty to all creditors.

On October 26, 2017, the Bankruptcy Court held an evidentiary hearing on the Settlement Motion. At the hearing, Trustee testified by way of proffer and on the witness stand. The declaration of Michael Kupka (Adv. D.I. 60-1) ("Kupka Decl."), Trustee's financial advisor, was also admitted into evidence. The Bankruptcy Court took the matter under advisement and issued its Memorandum Order on May 4, 2018, which granted the Settlement Motion and approved the settlement. (Adv. D.I. 68).

On May 17, 2018, Nebo filed a timely notice of appeal. (D.I. 1). The appeal is fully briefed. (D.I. 9, 11, 12). On November 19, 2018, the Court held oral argument. (D.I. 16).

## II. JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

The Court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1).

### B. Appellate Review of the Memorandum Order

The Court reviews the Memorandum Order for abuse of discretion. *See Myers v. Martin (In re Martin),* 91 F.3d 389, 391-93 (3d Cir. 1996) ("*Martin*") ("the ultimate issue on appeal is whether the bankruptcy court abused its discretion when it disapproved the compromise"). "In bankruptcy appellate litigation, the abuse of discretion standard is highly deferential to the judgment of the bankruptcy court." *In re W.R. Grace & Co.*, 475 B.R. 34, 74 (D. Del. 2012). Factual findings underlying the Bankruptcy Court's review may be set aside only if they are clearly erroneous. *See,*

*e.g., In re Exide Techs.*, 607 F.3d 957, 961-62 (3d Cir. 2010). Accordingly, courts "do not disturb an exercise of discretion unless there is a definite and firm conviction that the [bankruptcy] court . . . committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 645 (3d Cir. 2006).

### C. Bankruptcy Court's Approval of the Settlement Motion

"To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Martin*, 91 F.3d at 393 (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)). Bankruptcy Rule 9019 governs approval of settlements in bankruptcy cases. "The decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1987).

In evaluating a proposed settlement, the bankruptcy court must balance "the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393. The Third Circuit has recognized four factors that should be considered in striking the appropriate balance: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* "It remains a court's duty to ensure that compromises are fair and equitable, as are the other aspects of reorganizations. Under the fair and equitable standard, we look to the fairness of the settlement to other persons, *i.e.*, the parties who did not settle." *In re Key3Media Group, Inc.*, 2006 WL 2842462, *2 (D. Del. Oct. 2, 2006) (relying on *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968) (internal quotations and citations omitted)).

In applying the *Martin* factors, the bankruptcy court "need not be convinced that the

settlement is the best possible compromise; The Court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014) (citations omitted); *In re W.R. Grace & Co.*, 475 B.R. 34, 77-78 (D. Del. 2012) ("In analyzing the compromise or settlement agreement under the *Martin* factors, courts should not have a 'mini-trial' on the merits, but rather it should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.") The bankruptcy court considers "all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). The bankruptcy court need not, however, "conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by doing so, there would be no need of settlement." *Id.*

## III. DISCUSSION

The essential facts are not in dispute. Nebo's main arguments on appeal are that (i) the Bankruptcy Court erred in approving the compromise of the alter ego, breach of fiduciary duty, and actual fraud claims where the Trustee failed to engage in formal discovery of those claims (*see* D.I. 9 at 16-26); and (ii) the *Martin* factors otherwise favor rejection of the settlement (*id.* at 26-32). The Court begins with the *Martin* factors.

### A. Application of the *Martin* Factors Favors Settlement

Nebo argues that, notwithstanding Trustee's burden to establish that the settlement fell within the reasonable range of litigation possibilities, Trustee in his testimony displayed little knowledge and provided little insight into certain of the claims being compromised in the settlement. (*See* D.I. 9 at 16-21). Having reviewed the transcript of the hearing on the Settlement Motion, the Court agrees. However, the Court finds that application of the *Martin* factors supports

8

the Bankruptcy Court's decision to approve the settlement.

### i.     **Probability of successful litigation**

Under the first *Martin* factor, the Bankruptcy Court was required to consider the probability of successful litigation if Trustee continued to litigate the adversary proceeding rather than enter into the settlement. The Bankruptcy Court observed that the disputes in the adversary proceeding mainly revolve around Trustee's ability to prove two contentions: "First, that the Debtors were insolvent on the date of each transfer and did not receive reasonably equivalent value therefor, and second, that Debtors had the intent to defraud their creditors when making the transfers." (Op. at 9). The Trustee offered specific arguments and defenses that called into question the probability of success on these contentions. (*See* Adv. D.I. 57 at 7-8). The Bankruptcy Court canvassed the issues raised in the testimony with respect to each group of Transfers and made an informed and independent judgment regarding the defenses raised and challenges presented in successfully litigating these claims.

With respect to the $1,772,015.32 Intercompany Transfer, Defendants contend that this transfer was the repayment of a promissory note executed by U.S. Risk, which itself was executed to repay a third-party loan from an independent banking institution. Because the promissory note was satisfied, Defendants contend that the Intercompany Transfer was made in exchange for reasonably equivalent value. After consultation with his advisors, Trustee was satisfied that the Intercompany Transfer was a repayment of intercompany obligations given for reasonably equivalent value.[7] With respect to the $1,062,600 Equity Distribution Transfer,[8] Defendants challenged Trustee's insolvency analysis on the date of the Transfer, February 8, 2012. To show

---

[7] Hr'g Tr. at 10:12-14, 55:12-56:16.
[8] Hr'g Tr. at 57:19-59:4. As the Bankruptcy Court indicated in its Memorandum Order, this argument would presumably also apply to the $337,400 Equity Distribution Transfer made on the same date. Op. at 10 n.39.

9

that NPR was insolvent on the date of the Equity Distribution Transfer, Trustee made two major adjustments to NPR's balance sheet. First, Trustee reduced the accounts receivable relating to the earn-out receivable from $1.8 million to $197,000, which reduced NPR's net assets by $1.6 million.[9] Second, Trustee increased NPR's legal liabilities as of February 8, 2012, by relying on the ultimate disposition of the litigation with Nebo and Whitmarsh. The Bankruptcy Court found that Mr. Kupka credibly testified that his adjustments to the balance sheet were legitimately subject to challenge and that determining what was known and knowable as of February 8, 2012, would be highly contested. With respect to the Management Agreement Transfers, Defendants contend that any amounts paid thereunder were the payment for actual charges for the cost of providing services to the Debtors and that the payments were made while the Debtors were solvent. (Kupka Decl. at 9). With respect to the breach of fiduciary duty claims, the Bankruptcy Court found that Trustee recognized "significant hurdles that must be overcome under Delaware law" to prevail on those claims. (Op. at 11). Based on the foregoing defenses raised, Trustee believed that the there was no assurance of a favorable outcome on the merits, and that the claims against the Defendants were more in the range of $600,000 (as opposed to $3.34 million) and thus a $300,000 settlement was "commensurate with what Trustee reasonably believes he could recover after engaging in prolonged and expensive litigation and eliminates the risk of an unfavorable outcome." (Adv. D.I. 60 at 8).

Having canvassed the issues, the Bankruptcy Court found that "Defendants raised credible obstacles to the Trustee's success on the merits, including defenses such as reasonably equivalent value and solvency," and "the Trustee has shown the litigation is subject to significant challenge" such that the first *Martin* factor favored approval of the settlement. (Op. at 13).

On appeal, Nebo does not challenge the defenses raised by Defendants, dispute the facts set forth in the Kupka Declaration, or argue that Trustee's review of the data was somehow flawed.

---

[9] Kupka Decl. at 6-7; Hr'g Tr. at 57:19-59:4.

Rather, Nebo's main argument on appeal concerns the non-avoidance action claims – the "alter ego," breach of fiduciary duty, and actual fraud claims – with respect to which, Nebo argues, Trustee provided little evidence that the merits of those claims were valued in the settlement. Nebo asserts that the record contains "not a shred of evidence" that Trustee "ever considered, let alone evaluated, any of these three claims." (*See* D.I. 9 at 27). According to Nebo, Trustee's analysis was limited to insolvency, and insolvency is not a defense to any of these claims. Conversely, Trustee argues that the non-avoidance action claims are "equally challengeable based on the Bankruptcy Court's findings concerning the hurdles Trustee faced on establishing insolvency and other issues." (*See* D.I. 11 at 19-22). According to Trustee, Debtors' insolvency is central to Trustee's success in the adversary proceeding, "be it for avoiding constructively fraudulent transfers, as a significant 'badge of fraud' for avoiding intentionally fraudulent transfers, or serving as a component to a 'fraud or injustice' to support an alter-ego claim." (*Id.* at 20 (citing § 548(a); DEL. CODE ANN. Tit. 6, § 1304(b); *In re Harman*, 512 B.R. 321, 341 (Bankr. N.D. Ga. 2014)).

Nebo does not assert any error on the critical issue of solvency. Even if Trustee did establish insolvency, avoidance of the Intercompany Transfers is unlikely because they were payments by the Debtors on an antecedent debt and given for value. (Op. at ¶¶ 22, 30; Hr'g Tr. at 10:12-14; 55:12-56:16; Kupka Decl. ¶ 24). This comprises half of the amount of the Transfers at issue. With respect to the non-avoidance action claims, Trustee argues that the Bankruptcy Court considered these claims and was not required to analyze every claim asserted by the Trustee prior to approving the settlement. Nebo essentially argues that the settlement could only be approved on a claim-by claim basis, but Trustee asserts that this is not the standard for approving settlements under Bankruptcy Rule 9019. The Bankruptcy Court does not conduct a "mini-trial" on the merits and is not required to "conclusively determine claims subject to a compromise, nor must it have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need

of settlement." *Key3Media*, 336 B.R. at 92. Even if a claim-by-claim analysis was required to approve the settlement, Trustee argues that Nebo "ignores the reality that without insolvency established and without the Transfers avoided, Trustee's attendant [non-avoidance] causes of action are as likely to be unsuccessful and of no benefit to the estate." (D.I. 11 at 24).

The Bankruptcy Court agreed that "Trustee placed no emphasis on the actual fraud claims in his analysis of the settlement." (Op. at 14.) The Bankruptcy Court noted, however, that Defendants' challenges to balance sheet adjustments and solvency, if successful, would eliminate "a significant badge of fraud," and would give the Trustee "a reasonable basis to question whether there was actual intent to defraud creditors." (*Id.*). Based on the uncontroverted testimony, Trustee would apparently also face difficulty in proving failure to receive equivalent value, another badge of fraud. The Bankruptcy Court noted that Nebo could have called witnesses, including Whitmarsh, to testify about the allegations of fraud and Trustee's probability of success on those claims, but did not. (*Id.* at 15).

Without establishing insolvency, Trustee argues, the Trustee's claim for breach of fiduciary duty would likely fail, because only when a company is insolvent do its directors have fiduciary duties to creditors. *See, e.g., Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. Ch. 1992) ("the general rule is that directors do not owe creditors duties beyond the relevant contractual terms absent 'special circumstances … *e.g.*, fraud, insolvency, or a violation of a statute'"). Likewise, the remedy of "alter ego" addresses an "injustice or fraud." *See, e.g., In re Harman*, 512 B.R. 321, 341 (Bankr. N.D. Ga. 2014). Where the Transfers that predicate the adversary proceeding are defensible, the Trustee would have no "injustice or fraud" to remedy.

To reverse the order and disturb the Bankruptcy Court's discretion, Nebo would have to show that the Bankruptcy Court committed clear error when weighing the *Martin* factors. Based on the foregoing arguments and defenses, the Court finds no abuse of discretion in the Bankruptcy

Court's conclusion that the first *Martin* factor weighs in favor of approving the settlement.

### ii. Complexity of the litigation[10]

Under the third *Martin* factor, the Bankruptcy Court was required to consider the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending to it. The Bankruptcy Court considered Trustee's testimony that continuing to litigate the case would entail significant costs and delay. (Hr'g Tr. at 12:6-17). The Trustee's financial advisor is retained on an hourly basis, and the testimony supports a finding that going to trial would likely include defending against other pretrial motions filed by Defendants, the costs of trial preparation, and expert witness fees. If the case did go to trial, the Trustee testified that he believed the litigation costs could eclipse the amount of the proposed settlement. (Adv. D.I. 60 at 10).

Nebo argues on appeal that the Bankruptcy Court incorrectly looked ahead to the projected expense of going to trial in weighing this factor in favor of settlement. (D.I. 9 at 29-30). According to Nebo, the expense of trial does not support settlement at this procedural juncture. Nebo argues, "The current stage of the [adversary proceeding] is the worst time to enter into the proposed settlement, because the expense and complexity are currently at their lowest" – when the Motions to Dismiss were fully briefed and the matters were ready for oral argument. Should Trustee have prevailed on the pending Motions to Dismiss, Nebo argues, Defendants would have been faced with testifying under oath, and the settlement number would have increased. (D.I. 9 at 29-30). Nebo is correct that waiting for a ruling on the Motions to Dismiss would not involve much additional cost to the parties, and probably not much delay. But, as the Bankruptcy Court observed, the Motions to Dismiss are "are unlikely to be the final procedural maneuver before trial." (Op. at 16-17). Even assuming Trustee prevailed on the Motions to Dismiss, which would appear likely, Trustee had

---

[10] Neither party addressed the second *Martin* factor – likely difficulties in collection. The Court agrees that "[t]his factor is neutral and does not support either party." *See* Op. at 15.

sought to amend the complaint, which would have likely required an additional round of briefing on the Motions to Dismiss. The Court finds no evidentiary basis to conclude that the Trustee would likely have obtained a significantly better settlement if he prevailed on the Motions to Dismiss.

The Court also finds no error in the Bankruptcy Court's consideration of projected trial costs at this stage of the litigation. As Trustee correctly argues, the expenses of litigation are borne by the estate, and Trustee must ensure that any assets administered will benefit the estates. (*See* D.I. 11 at 27). Based on the financial details and insolvency matters at issue in this adversary proceeding, costs would include, at a minimum, the costs for Mazars – who is compensated on an hourly basis – to serve as an expert witness, produce and rebut an expert report, and testify. "If the litigation costs exceed the benefit available to the bankruptcy estates – especially here given the persistent issues of insolvency – Trustee may be required to abandon his claims." (*Id.* (citing 11 U.S.C. § 554(a) (property that is "burdensome to the estate or that is of inconsequential value and benefit to the estate" may be abandoned). Trustee rejects Nebo's argument that Trustee should litigate by gamble,[11] which may be appropriate for private litigants but, as Trustee argues, is not consistent with Trustee's obligations in administering the estate.

The Bankruptcy Court did not abuse its discretion in concluding that the case's specific facts – including the procedural posture, the discounted professional fees, and the projected expense of going to trial – favored the settlement. (Op. at 17).

### iii. Paramount interest of creditors

Under the fourth *Martin* factor, the Bankruptcy Court was required to consider whether the settlement serves the paramount interest of creditors. The Bankruptcy Court considered Nebo's argument that holders of 99% of the claims – *i.e.*, Nebo and Whitmarsh – did not support the

---

[11] The Bankruptcy Court noted that Trustee testified that various alternatives were discussed with Nebo, including selling the causes of action to Nebo or receiving funding from Nebo to continue litigation. Nebo did not accept any of these options. (Hr'g Tr. at 11:8-11).

14

settlement. The Bankruptcy Court acknowledged that, "if the decision was up to Nebo Ventures and Mr. Whitmarsh, they may prefer to take a gamble by taking this case to trial." (Op. at 17). However, the Bankruptcy Court was still persuaded that the settlement served the paramount interest of creditors, as it provides creditors with a modest 10% recovery, requires U.S. Risk's waiver of $1 million in claims (*e.g.*, its $660,000 proof of claim and $300,000 claim under § 502(h)), a waiver of professional fees in the amount of $225,000, and also eliminates the chance of an adverse outcome at trial. (*See id.*) The Bankruptcy Court noted additionally that professionals holding administrative claims, who are also creditors of the estates, support the settlement. (*See id.*). Despite Nebo's desire to litigate, the Bankruptcy Court did not abuse its discretion in finding that the paramount interest of creditors favors the settlement.

### B. Formal Discovery

Nebo's primary argument in opposing the settlement was that the Trustee did not commence any "formal discovery." Indeed, Nebo established on cross-examination that Trustee did not propound formal discovery, subpoena witnesses, or accept the help offered by Nebo and Whitmarsh, who were familiar with Defendants' corporate actions and could have been a source of information. The Bankruptcy Court noted, however, that the evidence showed that the Trustee, mainly through his financial advisors, had reviewed significant amounts of financial information.[12] The Bankruptcy Court found that additional information was requested from Carl Warren, several banking institutions, and other parties through informal document requests and Rule 2004 subpoenas. Additionally, Trustee received document production from U.S. Risk through the production of documents, in person meetings, and in the mediation process. (Hr'g Tr. at 7:20-8:11).

---

[12] This information included "general ledgers (current and historical, with a detailed record of all accounting transactions relating to assets, liabilities, equity, revenue, and expenses), bank statements, tax returns, the sale transaction documents, and other legal and financial documents as well as reports prepared by NPR's outside consultants." (Op. at 12).

15

Mr. Kupka also received documents from the Nebo and Whitmarsh prepetition litigation. (Kupka Decl. at 3).

Nebo argues that these efforts were insufficient and that formal discovery would have revealed more, especially in connection to the claims of actual fraud. In Nebo's state court litigation against NPR, the Court of Appeals in Georgia held that certain of the Defendants admitted to altering documents produced in discovery. (*See* Adv. D.I. 58 at Ex. 1). The Bankruptcy Court agreed that, while Nebo raised some doubt about Defendants' trustworthiness, based on Defendants' history of altering documents produced in discovery in other litigation, ultimately this doubt did not persuade the Bankruptcy Court that the settlement should not be approved: "Trustee's financial advisor relied on much more than just information from Defendants; he relied on documentation from multiple third-party sources. And there is no evidence that the financial advisor's review of those documents was flawed." (Op. at 13). Additionally, the Bankruptcy Court noted, Nebo had pointed to no procedure or case suggesting that the Trustee had to engage in formal discovery with Defendant.[13] "To the contrary, a settlement should stand or fall on the sufficiency of its terms," and the Bankruptcy Court could not "conclude that the Trustee's decision to use informal discovery meaningfully changes the probability of success in litigation here." (Op. at 14). The Court agrees with the Bankruptcy Court that while the Defendants' past conduct would have been a reason to engage in formal discovery in this case, "formal discovery does not constitute a necessary ticket to the bargaining table." (Op. at 14 (quoting *Newby*, 394 F.3d at 306)). The Bankruptcy Court did not abuse its discretion in weighing the probability of success in favor of the settlement despite a lack of formal discovery.

---

[13] *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (affirming settlement over objection that class counsel did not conduct formal discovery into certain claims before reaching a settlement, opting instead to use informal discovery); *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) (citation omitted) (affirming a class action settlement over the objection of parties that requested court-ordered discovery).

## IV. CONCLUSION

The Bankruptcy Court conducted the inquiry mandated by the Third Circuit. Upon review of the Bankruptcy Court's careful and thorough application of the *Martin* factors, the Court finds no basis to disturb the Bankruptcy Court's discretion in approving the settlement. The record created in connection with the hearing on the Settlement Motion contained sufficient information to support the Bankruptcy Court's conclusion that the settlement fell "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." Nebo does not persuade this Court on appeal that there was error in the Bankruptcy Court's legal analysis or the factual predicate for its analysis.

For the foregoing reasons, the Memorandum Order (Adv. D.I. 68) is affirmed. A separate order will be entered.